UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| SCOTT MCDERMOTT | ) | JURY TRIAL DEMANDED |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 3:14-CV-00704-NJR-PMF |
| v. | ) | |
| | ) | |
| DENNIS J. BARTON III | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE
## TO DEFENDANT BARTON'S MOTION TO DISMISS

### INTRODUCTION

Defendant pretended to be the Attorney for St. Anthony's Medical Center. He told Plaintiff in legal pleadings that he represented St. Anthony's Medical Center. Defendant proceeded to collect on the debt "on behalf of" St. Anthony's by filing a new legal action against Plaintiff in Madison County, Illinois. Barton knew that Plaintiff lived in Monroe County, Illinois. As a judgment debtor, Plaintiff has due process rights in the collection proceeding. As a result of Defendant abusing the system, those rights were and continue to be violated. The Plaintiff has had his rights violated under the Fair Debt Collection Practices Act. Most importantly, Plaintiff has properly pleaded his allegations involving deception and abuse of federal law. For reasons stated herein, Defendant's Motion to Dismiss should be denied.

Defendant's Motion to Dismiss is primarily a premature motion for summary judgment. Defendant fails to attack the sufficiency of the Complaint but instead attacks factual allegations. For example, Defendant assures the Court that he is in fact the

1

attorney for St. Anthony's Medical Center.[1] Moreover, Defendant's challenges to the legal sufficiency of the Complaint are meritless. The Defendant lied about representing St. Anthony's despite having no contact whatsoever with that entity prior to filing the Lawsuit. The Court should deny the Motion to Dismiss in its entirety.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be denied unless, after "accept[ing] as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2011), the plaintiff has failed to state a claim "that is plausible on its face." *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). To meet this standard, the plaintiff need not plead specific facts; instead, the complaint "need only give the defendant fair notice of what the...claim is and the grounds upon which it rests." *L.L. Nelson Enterprises, Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012) (*citing Erickson*, 551 U.S. at 93). In other words, in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court does not ask whether the plaintiff will ultimately prevail on his claim, but rather whether his complaint is "sufficient to cross the federal court's threshold," which is merely a "plausible 'short and plain'" statement of his claim. *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (*citing Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

## ARGUMENT

---

[1] Unfortunately, St. Anthony's own general counsel does not agree with Mr. Barton's position. Affidavit from Laura Frame, General Counsel to St. Anthony's Medical Center, **Exhibit 1** ("St. Anthony's Medical Center does not and has not employed Mr. Dennis J. Barton III nor does St. Anthony's Medical Center have or had any contractual relationship with Mr. Dennis J. Barton III.")

2

# I. DEFENDANT'S ANALYSIS OF THE ROOKER-FELDMAN DOCTRINE IS WHOLLY INACCURATE AND DOES NOT BAR PLAINTIFF'S FDCPA CLAIMS.

The Rooker-Feldman doctrine does not bar plaintiff's claims premised on Defendant's alleged improper activities in filing the state court suit, collecting under the consent judgment and stating in a subsequent letter to Plaintiff that he and his law firm lied to Plaintiff and other putative class members that they represented St. Anthony's Medical Center. Although Plaintiff complains of his injuries caused by the state court suit, judgment and letters, the claims asserted do not seek review and rejection of that judgment. Plaintiff does not challenge the state court's issuance of the consent judgment or seek to have it overturned.

Under the Rooker-Feldman doctrine, lower federal courts lack subject-matter jurisdiction when, after state proceedings have ended, a losing party in state court files suit in federal court complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007) (emphasis added). In essence, when determining if a federal plaintiff is seeking to review a state court judgment, the Court must determine whether the injury alleged in the federal complaint resulted from the state court judgment. See *Id.*; *O'Malley v. Litscher*, 465 F.3d 799, 802 (7th Cir. 2006). If so, the Rooker-Feldman doctrine bars the federal claim. See *Beth-El*, 486 F.3d at 292. "Rooker-Feldman also applies to bar federal claims that are 'inextricably intertwined' with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court." *Id.*

Here, Plaintiff contends that the Rooker-Feldman doctrine does not bar his FDCPA claim based on the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Under *Exxon*, the Rooker-Feldman doctrine only applies where someone against whom a judgment has been entered files a later federal action complaining of an injury caused by the state court judgment. *Id.* at 284. Plaintiff relies on the following language from the Exxon decision: The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: ***cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments***. *Id.* at 284 (emphasis added). Based on this language, Plaintiff maintains that because Defendant violated the FDCPA during and after the course of the state court litigation his claim does not fall under the Rooker-Feldman doctrine.

Plaintiff's FDCPA claim against the Defendant is distinct from the state court judgment because Plaintiff's injury resulted from Defendant's deceptive and misleading conduct in continuously stating to the state court and to the Plaintiff that they represent St. Anthony's Medical Center. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir. 1999), (violations of FDCPA were complete before state court entered judgment); see also *Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) (events preceding state court judgment outside scope of Rooker-Feldman). Here, Plaintiff's federal lawsuit does not target the state court's decision, but instead targets Defendant's practice of filing lawsuits and stating that he represents St. Anthony's

Medical Center where there is no attorney-client relationship. See generally, *Plaintiff's Amended Complaint*. At least one court in the Eastern District of Missouri has shot down Defendant Barton's argument that a dismissal of a consumer's FDCPA claim is appropriate. *Mueller v. Barton*, 4:13-cv-2523CAS (E.D. Mo. September 12, 2014). **Exhibit 2.** Plaintiff's claims are not covered by the Rooker-Feldman doctrine and Barton's Motion to Dismiss should be denied.

## II. DEFENDANT'S ARGUMENT REGARDING SAMC AS THE REAL PARTY IN INTEREST IS OUT OF PLACE FOR A MOTION TO DISMISS.

Defendant' argument that St. Anthony's was the real party in interest in the Lawsuit is meritless. St. Anthony's could not, as a matter of law, be the real party in interest for purposes of the Lawsuit after it sold the debt to CACi. Further, Defendant had no attorney-client relationship with St. Anthony's and thus could not claim to be its lawyer or file suit on its behalf. It is important to note that Judge Shaw of the Eastern District of Missouri has already rejected this argument and stated that Defendant' argument is "out of place" on a motion to dismiss. **Exhibit 2 at pgs. 15-19.**

The single case cited by Barton—*Powers*—is readily distinguishable. In *Powers*, the hospital itself, Skaggs Regional Medical Center, sued the consumer. *Skaggs Regional Medical Center v. Powers*, 2014 WL 623586 *2 (Mo. Ct. App. 2014). The collection agency to which Skaggs had assigned the account did not have any interest in the lawsuit. *Id*. The specific language of its assignment allowed Skaggs to retain the right to sue. *Id.* at 5. Thus, the court concluded that Skaggs had standing to sue the defendant. *Id.*

Unlike *Powers*, here St. Anthony's had nothing to do with this lawsuit except that it was improperly named as the plaintiff. Additionally, unlike the assignment agreement in *Powers*, here the assignment agreement between St. Anthony's and CACi did not provide St. Anthony's with a residual right to sue. Thus, the issue here is not St. Anthony's standing to sue, but rather Defendant Barton's right to sue in St. Anthony's name without its knowledge or consent. This deceptive conduct is not permitted by Missouri statute or any other authority. Moreover, because it was false, misleading, and unfair, Barton's conduct violated the FDCPA.

III. **DEFENDANT COULD NOT IDENTIFY HIMSELF AS ST. ANTHONY'S ATTORNEY BECAUSE HE HAD NO ATTORNEY-CLIENT RELATIONSHIP WITH ST. ANTHONY'S.**

Defendant stated in the Lawsuit and in letters to Plaintiff that they represented St. Anthony's Medical Center. **Exhibit 1** specifically refutes that assertion. Plaintiff properly alleges that this representation was false and misleading. However, Barton's argument relies on the premise that Barton could identify himself as the attorney for an entity who was not his client. This assumption represents a fundamental misunderstanding of the attorney-client relationship.

"An attorney-client relationship exists when a prospective client seeks and receives legal advice and assistance from an attorney who intends to undertake to provide legal advice and assistance to the prospective client in a particular matter." *State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 394 (Mo. Ct. App. 2011). "In determining whether the legal advice and assistance of an attorney is sought and received, courts look to the substantive nature of the contacts within the relationship,

'regardless of what formal or procedural incidents have occurred[.]'" *Polish Roman Catholic St. Stansilaus Parish v. Hettenbach*, 303 S.W.3d 591, 601 (Mo. Ct. App. 2010) (quoting *McFadden v. State*, 256 S.W.3d 103, 107 (Mo. banc 2008)). "Mere payment of a fee without proof that the payor received legal advice or assistance from the attorney or that the attorney intended to provide the client with legal advice or assistance, does not show an attorney-client relationship." *Dueker*, 346 S.W.3d at 394.

For an attorney-client relationship to exist, the attorney must have "performed services ***specifically intended by the client*** to benefit [the client]." *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628–29 (Mo. banc 1995) (emphasis added). Further, "merely because an attorney discusses the subject-matter of the litigation with a third party does not create an attorney-client relationship." *Multilist Serv. of Cape Girardeau Missouri, Inc. v. Wilson*, 14 S.W.3d 110, 114 (Mo. Ct. App. 2000).

Not only are Plaintiff's pleadings sufficient on this point, other facts available to Plaintiff at this stage already suggests that the Defendant had no attorney-client relationship with St. Anthony's. Moreover, while the Defendant claims he properly represented St. Anthony's, his purported client disagrees. Affidavit from Laura Frame, General Counsel to St. Anthony's Medical Center, **Exhibit 1** ("St. Anthony's Medical Center does not and has not employed Mr. Dennis J. Barton III nor does St. Anthony's Medical Center have or had any contractual relationship with Mr. Dennis J. Barton III."). Perhaps Mr. Barton can enlighten this Court with an explanation on how he or his law firm is the attorney for St. Anthony's Medical Center when their general counsel clearly states that they are not.

These facts, coupled with Plaintiff's Amended Complaint, are more than sufficient to demonstrate that Barton's claim that he represented St. Anthony's was false and misleading. Both the Amended Complaint and the facts adduced above establish that Barton did not give legal advice to St. Anthony's, did not have any contacts with St. Anthony's, and did not perform services specifically intended ***by St. Anthony's*** to benefit St. Anthony's.[2] Merely discussing the lawsuit with CACi would not have sufficed to create an attorney-client relationship between Barton and St. Anthony's. Because Barton did not have an attorney-client relationship with St. Anthony's prior to naming himself as its attorney, he deceived and misled Plaintiff in violation of the FDCPA.

Furthermore, the existence and scope of Defendant's representation of St. Anthony's, if any, cannot be resolved in a motion to dismiss because all Plaintiff's factual allegations are taken as true. The nature of the relationship between St. Anthony's and Defendant is a question of fact to be examined in discovery. For these reasons, Defendant's Motion should be denied.

## IV. THE PLAINTIFF'S CLAIMS THAT RISE FROM THE MISSOURI STATE COURT PROCEEDING AND JUDGMENT SHOULD BE TOLLED.

Courts may equitably toll a statute of limitations "when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990), cert. denied 498 U.S. 1026 (1991). Equitable

---

[2] The scope and purposes of the Illinois Rules of Professional Conduct also suggest that an attorney may claim to represent an entity which is not his client. For example, the Rules' Preamble states that "[i]n all professional functions a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation." Preamble. Specifically, Rule1.2(a) requires that a lawyer "abide by a client's decisions concerning the objectives of representation, subject to Rule 1.2(c), (f) and (g), and shall consult with the client as to the means by which they are to be pursued." Id. 1.2(a). Further, Rule1.14(a)(1) requires that a lawyer "keep the client reasonably informed about the status of [a] matter." Id. 1.4(a)(1). Finally, Rule 1.16(a)(1) provides that "[A] lawyer shall not represent a client…if the representation will result in violation of the rules of professional conduct or other law." Id. 1.16(a)(1).

8

tolling applies to FDCPA claims in appropriate circumstances. *Somin v. Total Cmty. Mgmt. Corp.*, 494 F.Supp.2d 153, 158 (E.D.N.Y. 2007) (citing Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)); Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011).

To merit equitable tolling, the plaintiff must show that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smithrud v. City of St. Paul,* Nos. 12–3713, 12–3736, 2014 WL 1226751, at *3 (8th Cir. Mar. 26, 2014). Although courts do not readily toll statutes of limitation,

[t]here are exceptions to the rule, one of which applies to Defendant who fraudulently conceal their wrongdoing and prevent a plaintiff from filing suit during the limitations period. In those circumstances, the "right to be free of stale claims," *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428, 85 S. Ct. 1050, 13 L.Ed.2d 941 (1965), yields to the inequity of the defendant's conduct, see *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946), *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding tolling appropriate when "when affirmative misconduct on the part of the defendant has lulled the plaintiff into inaction.") "The basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984).

In a related doctrine, fraudulent concealment, a plaintiff can toll a statute of limitations if he pleads "(1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence." *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010). "An affirmative act of concealment requires more than

9

mere silence; indeed, the defendant must perform some 'trick or contrivance tending to exclude suspicion and prevent inquiry.'" *Martin v. Grehn*, 546 Fed. Appx. 415, 420 (5th Cir. 2013) (quoting *Crummer Co. v. DuPont*, 255 F.2d 425, 432 (5th Cir. 1958)). However, the plaintiff can also demonstrate that "the wrong itself was of such a nature as to be self-concealing." *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). When established, the statute of limitation is tolled until the time the fraudulently concealed facts were, or should have been, discovered by the plaintiff. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). Courts have made it clear that equitable tolling "is not limited to cases where fraudulent concealment is shown, and may also apply where certain 'special circumstances' are present." *Boyd v. J.E. Robert Co.,* No. 05–CV–2455 (KAM)(RER), 2011 WL 477547, at *7 (E.D.N.Y. Feb. 2, 2011) (citing Valdez v. U.S., 518 F.3d 173, 183 (2d Cir. 2008)).

Here, Defendant's deceptive conduct merits the application of equitable tolling. Each claim Plaintiff makes in relation to the Defendant's conduct is either a self-concealing act of fraud or an express attempt by Defendant to conceal his fraud. For example, Plaintiff could not have known from the lawsuit filed against them that Defendant was actually representing CACi. *See generally, Plaintiff's Amended Complaint* [Doc. #14]. Defendant claimed that he represented St. Anthony's with respect to Plaintiff's debt and actively concealed from Plaintiff the fact that Defendant did not represent St. Anthony's. *Id.*

There can be no clearer instance of a "trick or contrivance tending to exclude suspicion and prevent inquiry" than a statement by Barton which was precisely the opposite of the truth. *Martin*, 546 Fed. Appx. at 420. Despite these deceptive

concealments and misrepresentations, Plaintiff diligently pursued his claim. Soon after they consulted with the undersigned counsel in and learned of Defendant's FDCPA violations, they filed the instant Complaint. Moreover, Defendant's long-term campaign of deceit, even if it does not amount to fraudulent concealment, is a "special circumstance" which was "out of [Plaintiffs'] hands" and "lulled [Plaintiffs] into inaction." *Heideman*, 904 F.2d at 1266; Brown, 466 U.S. at 151.

Furthermore, because the FDCPA embodies Congress's broad remedial purposes in favor of consumers and against misleading debt-collection tactics, *Picht*, 77 F. Supp. 2d at 1043, the need for tolling in the face of deceptive FDCPA violations is even more necessary. *Deutsche Bank v. Lichtenfels*, Nos. CV044003402S, CV065007438S, 2009 WL 2230937, at *20 (Conn. Super. Ct. June 17, 2009) ("[I]t would be odd, given the remedial nature of the FDCPA, that equitable tolling arguments pointing to unfair or deceptive practices of debt collectors which argue for tolling must be ignored when the whole act is aimed at actions by debt collectors deemed not fair to debtors."); *Jones*, 747 F.2d at 1040 (extolling the importance of Congressional purpose in evaluating propriety of tolling).

Seventh Circuit courts have provided compelling reasons why equitable tolling can and should apply to the FDCPA statute of limitations. In *Marshall-Mosby*, the Seventh Circuit rejected the notion that the FDCPA's statute of limitations is jurisdictional. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir. 2000). There, the court found that "the statute of limitations provision in the FDCPA is not a jurisdictional restriction." *Id.* This holding accords with the long-standing principle that "periods of limitations in federal statutes…are universally regarded as non-

jurisdictional." *Central States, S.E. & S.W. Areas Pension Fund v. Navco*, 3 F.3d 167, 173 (7th Cir. 1993), (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–98 (1982)), abrogated on other grounds *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*, 522 U.S. 192 (1997).

Likewise, in *Clark* the court found the presumption that statutes of limitation are not jurisdictional is not rebutted in the FDCPA context. *Clark v. Bonded Adjustment Co.,* 176 F. Supp. 2d 1062, 1066 (E.D. Wash. 2001). The court started from the notion that "[t]here is a 'rebuttable presumption' that statutory time limits are not jurisdictional, and therefore that equitable tolling or estoppel is available…." *Id.* To rebut this presumption, the court must assess "whether the time limit is 'phrased... as a period of limitation' or 'speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the federal courts.'" *Id.* (quoting *Calderon v. United States District Court*, 128 F.3d 1283, 1287 (9th Cir. 1997)).

The court concluded that although the FDCPA's statute of limitations is in a section with the heading "Jurisdiction," this one indication was insufficient to rebut the presumption of non-jurisdictionality. *Id.* at 1067. Moreover, that heading was added only to the U.S. Code publication of the statute and is not present in the statute-at-large which enacted the FDCPA. *Id.* at 1068. The court further observed that the FDCPA's time-limit language does not itself refer to jurisdiction in any way. *Id.* The court thus determined that "the FDCPA reads like an 'everyday, run-of-the-mill statute of limitations' and is not jurisdictional." Id. (quoting *Calderon*, 128 F.3d at 1288 n.4).

Similarly, in *Mangum*, the Ninth Circuit found that the FDCPA's statute of limitations is not jurisdictional. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935,

12

940–41 (9th Cir. 2009). The court expressly rejected the defendant's contention that equitable tolling is not available under the FDCPA because the statute of limitations is an element of subject-matter jurisdiction. *Id.* at 939. The court approved *Clark's* reasoning and found that the title "Jurisdiction" added by the Office of Law Revision Counsel in Congress "cannot change the meaning or intent of a statutory provision." *Id.* at 940. The Ninth Circuit concluded, as *Clark* did, that there was no evidence in the statute or legislative history to rebut the presumption that the time limit is not jurisdictional. *Id.*; see also *Lichtenfels*, 2009 WL 2230937, at *20 (approving *Clark's* reasoning in light of the broad remedial purposes of the FDCPA).

**V. AS USED IN THE FDCPA, THE TERM "LEGAL ACTION" INCLUDES SEPARATE ACTIONS TO ENFORCE PREVIOUSLY-OBTAINED JUDGMENTS.**

The FDCPA prohibits a debt collector from bringing "any legal action on a debt" in a judicial district other than where the debtor owns real property, where the consumer signed the contract sued upon, or where the consumer resides at the commencement of the legal action. 15 U.S.C. § 1692i. Congress chose to use the term "legal action" as opposed to "law suit." The term "legal action" "encompasses all judicial proceedings, including those in enforcement of a previously-adjudicated right," according to the **only** federal appellate court to ever address the issue. *Fox v. Citicorp Credit Servs, Inc.*, 15 F.3d 1507, 1515 (9th Cir.1994). The Ninth Circuit based its holding primarily on the plain language of the statute: "any legal action on a debt," especially when read in conjunction with the broad definition of "debt" which applies "whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); *Fox, supra*, at 1515.

The *Fox* court further reasoned that reading "legal action" to include actions to

13

enforce judgments is in keeping with the Congressional purpose of the venue provision of the Act. "In enacting the provision, Congress was concerned about consumers having to defend against suits in 'distant or inconvenient' courts. S.Rep. No. 382, 95th Cong., 1st Sess. 5 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699." *Fox,* supra, at 1515. As the *Fox* court noted, the same concern about defending an original law suit in a distant forum applies just as much to defending against judgment enforcement actions in a distant forum:

"Here, for example, had the writ not been quashed, the Foxes would have had to move for its quashing or defend against the amount of garnishment in a distant court. We find no indication that Congress intended to exclude enforcement actions, entailing the same concerns as initial adjudications, from the venue provision." *Id.*

See also, *Martinez vs. Albuquerque Collection Services*, (D.N.M. 1994), 867 F. Supp. 1495, 1501-1503 (holding that both the filing of a collection suit and the filing of a garnishment action in a distant forum violates 15 U.S.C. § 1692i, and citing *Fox*).

A Colorado state appellate court came to the same conclusion on a similar issue, based on the same reasoning the *Fox* court used. The Court of Appeals of Colorado, Division A, held that a statutory foreclosure procedure, for the limited purpose of determining whether a default has occurred, is a "legal action" for purposes of the FDCPA. *Zartman v. Shapiro & Meinhold*, 811 P.2d 409,411-413, (Colo. App. 1990), affirmed on other grounds, Shapiro & Meinhold v. Zartman 823 P.2d 120 (Colo. 1992). In Colorado, the limited hearing at issue is initiated by filing a motion, followed by notice to the debtor. If the debtor does not respond within five days, an order may issue authorizing the sale of the secured property without a formal hearing. *Id.* at 411-412.

The *Zartman* court construed the term "legal action" in light of the legislative purpose to protect consumer debtors from "forum abuse." *Id.* at 412, citing S.Rep. No.

14

95-382, 95th Cong., 1st Sess., at 5, reprinted in 1977 U.S. Code Cong. & Admin.News 1695, 1699. The court also found that "the venue provision was an 'attempt to minimize the perceived imbalance of power between debtors and creditors by requiring venue for consumer debt actions in a locale convenient to the debtor.'" *Id.*, citing Sweig, Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act, 21 New England L.Rev. 697 at 705 (1986). The court was concerned that to allow even the limited- purpose proceeding to be filed in a distant forum would unfairly subject the debtor to "much inconvenience and expense," which "directly contradicts the purpose and policy behind the FDCPA." *Id.* at 413.

The Colorado Supreme Court affirmed *Zartman*, but on different grounds. Nonetheless, in dicta, the Colorado Supreme Court agreed with the Court of Appeals on this issue, citing two policy reasons. First, filing the limited action in a distant forum would result in "added cost and expense to a debtor who is required to file his response in a county where he has no ties." Second, it would give attorneys who engage in filing these motions in distant fora "a competitive advantage over other debt collectors who must file in the county where the property is located." *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 125 (Colo. 1992). In *Blakemore v. Pekay*, 895 F.Supp. 972, 982-83 (N.D. Ill. 1995), another federal court agreed with and adopted the *Fox* rationale, *supra*, that a wage garnishment is a separate "legal action" on a debt, for purposes of calculating the statute of limitations for a FDCPA claim.

Thus it is clear that in decisions which consider the plain language of the statute, which is consistent with Congressional intent, courts conclude that an action to enforce a judgment is a "legal action" which the FDCPA directs must not be brought in a distant

15

forum. The only case cited by Defendant, *First Finance v. Pellum*, 62 Ill.2d 86, has no bearing on the case at bar. "On this record the only question presented is whether the State is immune from wage-deduction proceedings under the Wage Deduction Act." *Id.* at 92.

The Defendant states Illinois law does not recognize garnishments as an action against consumers. However, nothing could be further from the truth. In Illinois, the judgment debtor is entitled to request a hearing and, therefore he or she is a party to the proceeding.[3] 735 ILCS 5/12-705.

# V I .  BY FILING A NEW CASE IN MADISON COUNTY ON A CERTIFICATE OF JUDGMENT, DEFENDANT BROUGHT A "LEGAL ACTION" AGAINST PLAINTIFF PROHIBITED BY 15 U.S.C.§ 1692i.

Defendant filed a certificate of judgment in Madison County, Illinois, and then filed a garnishment proceeding on the new Madison County legal action. **Exhibit 3 at pg. 2.** It is important to recognize that in Illinois the filing of a certificate of judgment results in a new case, complete with its own new case number. In this case, the certificate of judgment filing in Madison County was, in fact, assigned case number 13-SC-1367. **Id. at pg. 1.** This is a different legal action from the original, which was assigned St. Louis County, Missouri case number 12SL-AC42741. Defendant actually captioned this matter to be filed in Monroe County, Illinois because he knew that was the appropriate forum for

---

[3] Defendant's contention that an Illinois garnishment proceeding "primarily concerns the garnishee" is untrue, both from a legal standpoint, as discussed *supra*, and from a practical standpoint, as any Illinoisian who has faced the involuntary removal of money from his or her paycheck or bank account knows well.

16

this matter to be filed.  Despite knowing Madison County was the improper forum for this new legal action, Defendant chose to file it there anyway.  **Id. at pgs. 1 and 4.**

A further distinction is that in an Illinois certificate of judgment case, the debtor **is** a party to the new action, such as in the Madison County new case Defendant filed against the named Plaintiff, "St. Anthony's Medical Center v. Scott McDermott." In an Illinois wage garnishment proceeding, the debtor receives notice, and has the opportunity to request a hearing and to claim exemptions.  735 ILCS 5/12-705.

Because the Illinois procedures are very similar to those at issue in *Fox*, the policy rationale of § 1692i and the *Fox* court are identical to the issues in this case.  A consumer debtor incurs inconvenience and expense in defending against a judgment enforcement action just as much as defending against the original action.  If the named Plaintiff wished to defend against the wage garnishment proceeding Defendant filed, he would have had to excuse himself from work to appear in Madison County Court, approximately 43 miles from his home versus the 1.5 miles he lives from the Monroe County courthouse.  If he desired counsel to represent him at a garnishment hearing, he would likely have to attempt to hire counsel who practices in Madison County, as opposed to where he resides in Monroe County.

Similarly, the relevant facts of the Colorado *Zartman* case are nearly identical to those here: a limited-purpose hearing, in which the debtor receives notice and must request a hearing and appear in a distant forum in order to defend.  Further, a policy of encouraging fair competition among collection lawyers requires a level playing field, so that law firms such as the Defendant do not gain an unfair advantage over firms who comply with the venue provision of the FDCPA, refraining from filing judgment

enforcement proceedings in a forum inconvenient to the debtor. Thus the weight of authority (including the only federal appellate authority), the policies behind the FDCPA, and Congressional intent all support the conclusion that, at least in Illinois, filing a certificate of judgment followed by a motion for a garnishment in a distant forum violates § 1692i of the FDCPA. Taken all Plaintiff's allegations as true, Defendant's Motion to Dismiss must be denied.

## CONCLUSION

This Court should deny Defendant's Motion to Dismiss and allow all of Plaintiff's claims to remain intact. Plaintiff also requests such further relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED:**

/s/ James W. Eason                    .

**JAMES W.EASON #6281329**
**The Eason Law Firm, LLC**
**124 Gay Ave., Suite 200**
**Clayton, Missouri 63105**
**Phone: (314) 932-1066**
**Fax:    (314) 667-3161**
**Email: james.w.eason@gmail.com**

## CERTIFICATE OF SERVICE

The undersigned attests that, on October 24, 2014, the foregoing document was served via operation of the Court's electronic filing system on the following counsel of record:

Dennis J. Barton III
17600 Chesterfield Airport Rd., Ste. B7
Chesterfield, MO 63005
dbarton@bartonlawllc.com

/s/   James W. Eason